**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| CSX Transportation, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Superior Grain LLC, | ) | Case No. 4:07-cv-034 |
| | ) | |
| Defendant. | ) | |

Before the court is a motion filed by three non-parties to quash subpoenas for production of documents. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

CSX Transportation Inc. ("CSX") initiated the above entitled action on April 13, 2007, seeking to recoup $176,332.00 in unpaid rail freight charges from Superior Grain, Inc. ("Superior Grain"). Pursuant to a stipulation between the parties, judgment for the aforementioned amount was entered in CSX's favor on April 9, 2008.

Endeavoring to collect on its judgment, CSX subpoenaed Superior Grain's financial records. It later deposed Mr. Les Knudson (Knudson), the owner and president of Superior Grain, about transfers by Superior Grain to three other entities owned and operated by the Knudson family – Missouri River AG Processing, Long Creek Seed Cleaning, LLC), and Knudson Enterprises (collectively referred to as the "Knudson Entities").

1

Knudson testified that Superior Grain may have transferred in the neighborhood of $3.2 million[1] to the Knudson Entities during the time frame in which it incurred its debt to CSX, prompting CSX to serve subpoenas for production of documents on the Knudson Entities. The documents sought were:

> 1.   Any and all real estate deeds, leases, mortgages, mortgage notes, deeds of trust, payment schedules, lease payments, lease accruals, mortgage payments, and checks to individuals partnerships, companies, LLCs, corporations, banks, credit unions, or other financial institutions for payment of any and all leases, mortgages, security deeds, or deeds of trust of trust owned by . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, or Knudson Enterprises] or held for . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, or Knudson Enterprises] by any person, entity, or trustee.
>
> 2.   Any and all federal and state corporate tax returns
>
> 3.   Any and all financial statements, profit and loss statements, balance sheets, work papers, income statements, balance statements, trial balance sheets, ledgers, journals, accounting statements, accounting reports, or other documents designed to present the financial condition of . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, and Knudson Enterprises] in summary form, prepared by its officers, directors, owners or members or on its behalf by any person or entity, or submitted to any financial institution.
>
> 4.   Copies of any and all checks, money orders, cashier's checks, wire transfers, electronic transfers, ACH debits, instruments of payment, negotiable instruments, or other documents representing or relating to payments, distributions, draws or transfers of assets from . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, or Knudson Enterprises] to any of its officers, directors, members, owners, shareholders, or employees.
>
> 5.   Any and all bank statements, money market account statements, investment or brokerage account statements, passbooks, entry ledgers, computer files, spreadsheets, journals, or other representations of whatever kind that relate to or reflect money, property (real or personal) or assets held by . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, or Knudson Enterprises] at any financial institution, investment firm, brokerage firm, bank, savings institution, safe

---

[1] CSX estimated that Superior Grain had transferred a combined $3.2 million Missouri River, Long Creek Seed, and Knudson Enterprises based its review of Superior Grain's books. During his deposition testimony, Knudson did not dispute this figure, but added that these transfers were mostly payment for services rendered.

>    deposit box, credit union, savings and loan, trust company or other financial or credit company.
>
>    6.      All documents reflecting or relating to any transfer or conveyance of any asset or interest in any asset between . . . [Missouri River AG Processing, Long Creek Seed Cleaning, LLC, and Knudson Enterprises] and the Related Persons.
>
>    7.      All documents reflecting or relating to any transfer or conveyance of any asset or interest in any asset between . . . [Superior Grain, Inc., Missouri River AG Processing, Long Creek Seed Cleaning, LLC, and Knudson Enterprises].

(Docket No. 48-2).

On January 13, 2009, the Knudson Entities filed a Motion to Quash Subpoena for Production of Documents. They objected to the subpoenas on the grounds that they were unduly burdensome, sought documentation obtainable from Superior Grain, did not provide sufficient time for compliance, and were not served within the district of the issuing court

CSX filed a response in opposition to Knudson's motion on February 17, 2009, as well as its own motion to compel discovery. In its filings, CSX asserts that the Knudson Entities effectively waived their objections by not timely responding to its subpoenas. It further maintains that the documents it had requested are relevant in determining the nature of Superior Grain's relationship with and the extent of its transfers to the Knudson Entities. Finally, it seeks sanctions for the Knudson Entities failure to respond to its subpoenas and for filing a dilatory motion to quash that it contends is groundless. The Knudson Entities have responded disputing these contentions.

## II.    DISCUSSION

### A.    Motion to Quash

CSX's subpoenas to the Knudson Entities were all issued in the name of this court. Yet, the subpoenas required that the Knudson Entities produce virtually all of their financial records for an undefined period of time at the offices of CSX's attorneys in Pennsylvania. This made the

subpoenas void on their face since Fed. R. Civ. P. 45(a)(2)(C) requires that the subpoenas for production of documents must issue from the court in which the inspection is to take place. E.g., Monsanto Co. v. Victory Wholesale Grocers, 2008 WL 2066449, at *3 (E.D.N.Y. 2008); Falicia v. Advanced Tenant Services, Inc., 235 F.R.D. 5, 10-11 (D.D.C. 2006).

Also, the requirement that the Knudson Entities produce virtually every piece of financial information for an undefined period, both paper and electronic, at the offices of CSX's attorneys, which is almost two thousand miles distant from where the subpoenas were served and the bulk of the records are located, is patently unreasonable and unquestionably imposes an undue burden. And, this is putting aside the fact that the subpoenas were served on December 19, 2008, which was a Friday, and by their terms required compliance by December 23, 2008, which was the following Tuesday.

CSX argues that the Knudson Entities waived their right to object to the subpoenas by not moving to quash them within the time period provided by Rule 45(c)(2)(B). However, the subpoenas are so fundamentally defective that the court may not, and in any event will not, enforce them even if the motion to quash was late. Monsanto Co. v. Victory Wholesale Grocers, supra; Falicia v. Advanced Tenant Services, Inc., supra; see Kupritz v. Savannah College of Art & Design, 155 F.R.D. 84,88 (E.D. Pa. 1994).

Further, attorneys who issue subpoenas "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). This the CSX attorneys failed to do, and an appropriate sanction is quashing the subpoenas.

### B.     CSX's Motion to Compel Discovery

The foregoing is obviously dispositive of CSX's motion to compel compliance with the subpoenas that were dated December 8, 2008, and that were served on December 19, 2008.

In anticipation of the court quashing the existing subpoenas, CSX has filed modified subpoenas changing the place of production to Crosby, North Dakota, and requests that the court enforce the modified subpoenas. These subpoenas, however, have not been served, and the court questions whether it has the power to enforce compliance in the absence of service, particularly when the original subpoenas are defective and void. CSX points to the delay that will take place if new subpoenas must be issued and served. However, this problem is one of its own making.

Because this matter may come before the court again, the court will also address several of the other objections made by the Knudson Entities. One of the objections is that the subpoenas are overbroad. At this point, and without making any final ruling with respect to the issues of overbreadth, the court agrees the subpoenas are overbroad to the extent there were no limitations as to time with respect to the records demanded.[2] For example, it appears from Knudson's deposition that Long Creek has been in existence since 1996, and any demand for documents extending that far back is overbroad and unduly burdensome, particularly given the time limitations imposed on any claim for fraudulent conveyance as set forth in N.D.C.C. § 13-02.1-09.

Another objection of the Knudson Entities is one of cost. The only obligation of the Knudson Entities would be to make the subpoenaed records available for inspection and copying at an appropriate location, which appears to be Crosby, North Dakota. There is no obligation on the

---

[2] In reviewing the demand for documents, the court had difficulty understanding their scope in light of the predicate definitions. For example, the predicate definitions defined the various Knudson Entities to include their officers, employees, agents, etc. Does this mean that the requests were intended to require production of federal and state income tax returns for these persons? The court assumes not.

5

part of the Knudson Entities to copy the material, and CSX can arrange for its own reproduction. As for any costs that may be incurred in the gathering and assembly of the records, the court makes no ruling at this time, but one of the factors that the court can consider is the relative equities of the case and the degree of involvement of subpoenaed persons.  See, e.g., In re Honeywell International, Inc. Securities Litigation, 230 F.R.D. 293, 302-303 (S.D.N.Y. 2003); In re Law Firms of McCourts, 2001 WL 345233, at *1 (S.D.N.Y. 2001); In re Exxon Valdez,142 F.R.D. 380, 383 & n.3 (D.D.C. 1992).  On the one hand it appears the Knudson Entities are family-held entities that are closely related to Superior Grain and creditors have the right to be protected against fraudulent conveyances. On the other hand, the amounts transferred to the Knudson Entities, while large, may very well have been for legitimate reasons as testified to by Knudson given the nature of the businesses.[3]  Further, if there was anything to be gained, the court suspects that it would have been pursued by the local bank, which is a secured creditor that is still out money and which knows the situation far better than CSX.  In fact, it appears that the local bank took as collateral for its loan not only the assets of Superior Grain, but also the assets of one or more of the Knudson Entities, as well as a personal guarantee from Knudson.

Still another objection is that the documents have been obtained or could have been obtained from Superior Grain.  The court agrees with CSX that this not an appropriate objection under the circumstances, particularly given the issues and the relationship of Superior Grain to the Knudson Entities.

---

[3] In fact, the large amount owed to CSX as the secondary shipper, together with the even the larger amount alleged to be owed to BNSF under the suit BNSF recently filed against Superior Grain, are indicative of the size of the operations that Superior Grain and the related entities were engaged in.

**III.	ORDER**

The motion of the Knudson Entities to quash the subpoenas dated December 8, 2008, and which were served on December 19, 2008, (Doc. No. 45) is **GRANTED**.  CSX's motion to compel compliance with the same subpoenas (Doc. No. 58) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 6th day of April, 2009.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge